IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NOAH PARRAZ, as Personal Representative
of the Wrongful Death Estate of GILBERT PARRAZ,
and SLYVIA PARRAZ, individually,

    Plaintiffs,

v.                                              Case No. 1:22-cv-472 KG-JMR

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, as trustees
of the University of New Mexico Hospital, and
THE UNITED STATES OF AMERICA, and
RONALD A. PITT, M.D.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Opposed Motion for Summary Judgment on Plaintiffs' Federal Tort Claims Act Claim, (Doc. 115), filed on January 8, 2024. Plaintiffs filed their Response, (Doc. 123), on January 29, 2024, and Defendant filed a Reply, (Doc. 130), on February 20, 2024. Having considered the briefing and applicable caselaw, the Court denies the Motion.

I. *Background*

    A. Procedural Background

On June 27, 2022, Plaintiffs filed this action against the Board of Regents of the University of New Mexico, the United States of America, Daniel J. Dickman, M.D., and Ronald A. Pitt, M.D. for medical negligence, wrongful death, and loss of consortium following Gilbert Parraz's death. (Doc. 16). As of the date of this Order, the United States is the only remaining defendant.

B. Undisputed Material Facts

The facts in this section are either undisputed or stated in light most favorable to the nonmovants, Plaintiffs. To the extent that proffered facts have been omitted, the Court deems them immaterial to the Motion. Both parties agree Dr. Dickman was an employee of the Veterans Administration (VA) while Dr. Pitt was an employee of the University of New Mexico hospital. (Doc. 14), *see* (Doc. 110).

At all material times, Gilbert Parraz was a Navy veteran and patient at the Raymond G. Murphy VA Hospital (VAMC). (Doc. 115) at 3, (Doc. 123) at 3, Undisputed Material Fact ("UMF") 1. Mr. Parraz had a history of smoking and was enrolled in a lung-cancer screening program. (Docs. 115, 123) at 3, UMF 2. At the VAMC, Mr. Parraz's primary care provider, Dr. William Anderson, referred Mr. Parraz to have an annual chest CT screening. (Doc. 115-1) at 3–5, UMF 3. Mr. Parraz underwent a lung screening test on June 5, 2020, at the VAMC. (Doc. 115) at 4, (Doc. 123) at 4, UMF 4. During this screening, Dr. Dickman, a third-year senior resident radiologist, utilized a software called PowerScribe to create a draft report of the scan. (Doc. 115) at 5, (Doc. 123) at 5, UMF 5. Once the draft report was complete in PowerScribe, it was sent to Dr. Ronald Pitt to review, verify, and finalize. (Doc. 115) at 6–7, (Doc. 123) at 6, UMF 6. Dr. Anderson could not review the report until it was finalized by Dr. Pitt. (Doc. 115) at 7, (Doc. 123) at 5, UMF 7.

The final radiology report from Mr. Parraz's June 5, 2020, scan "did not include information about a nodule in the left lobe," despite the exam showing there was a nodule present. (Doc. 115) at 9, (Doc. 123) at 7, UMF 8. The report had two signatures, one from Dr. Pitt as the verifier radiologist and the other from Dr. Dickman, as the resident radiologist. (Doc. 16) at 7, (Doc. 21) at 3, UMF 9. On April 1, 2021, the hospital informed Mr. Parraz and his

family that there was, in fact, a nodule present on the June 5, 2020, scan. Disclosure of Adverse Event (Doc. 123-7), UMF 10. On April 26, 2021, just over three weeks later, Mr. Parraz died without obtaining a cancer diagnosis. (Doc. 115) at 10, (Doc. 123) at 8, (Doc. 16) at 9, (Doc. 21) at 4, UMF 11.

Plaintiffs provided two experts, Dr. Josef Nisenbaum and Dr. Stephanie Han. *See e.g.* (Doc. 115) at 10–12, (Doc. 123) at 10–11. Dr. Nisenbaum established a standard of care, and subsequent breach, while Dr. Han established causation. *Id.* The parties interpret the experts' testimony differently. *See e.g.* (Doc. 115) at 10–12, (Doc. 123) at 10–11. Notably, the United States did not proffer any expert testimony to conflict with Plaintiffs' expert testimony.

Because much of Defendant's arguments rely on the VAMC's PowerScribe software, the Court finds it important to explain how it was utilized in this case. In Powerscribe, Dr. Dickman drafted a report of the scan as the primary interpreting radiologist. (Doc. 115-2) at 28:7–29:3. Once the draft was complete and ready for verification, Dr. Dickman selected "Approve" and PowerScribe alerted Dr. Pitt, the verifier, that Dr. Dickman's report was ready for review. (Doc. 123-3) at 71:20–23. At that point, Dr. Pitt reviewed the report and signed it to be released to Dr. Anderson. (Doc. 115-2) at 28:7–29:3.

II. *Legal Standard*

Summary judgment should be granted if the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.*

3

The parties must support factual allegations with evidence and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine dispute of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing there is a genuine dispute for trial. *Anderson*, 477 U.S. at 250–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant still bears the burden to produce real evidence. The nonmoving party cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

### III. Analysis

> Under the FTCA, the United States can be held liable for "personal injury or death caused by the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Bethel v. United States*, 456 Fed. Appx. 771, 777 (10th Cir. 2012) (citing 28 U.S.C. § 1346(b)(1)) (internal emphasis omitted). "This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Id.* (internal citations omitted). Here, the United States' liability is the same as a private radiologist provider in New Mexico. Accordingly, New Mexico law governs Plaintiffs' claims for medical negligence.

To prove a medical negligence claim under New Mexico law, a plaintiff needs to prove, through expert testimony: (1) the defendant owed the plaintiff a standard of care recognized by law and the medical community; (2) the defendant breached the standard of medical care; and (3) the defendant's acts or omissions caused the plaintiffs injuries. *Torres v. United States*, 2014 WL 11514672, *3 (D.N.M.) (citing *Blauwkamp v. Univ. of New Mexico Hosp.*, 1992-NMCA-048); *Payne v. United States*, 2021 WL 6062114, at *3 (D.N.M.) ("Expert testimony from a competent medical professional is almost always required"). "A defendant seeking summary judgment in a medical malpractice action must negate at least one of the elements of the plaintiff's claim." *Id.* The United States moves for summary judgment on each element.

In short, this case concerns: (1) whether and to what extent a resident radiologist owes a duty to their patients; and (2) whether a resident can cause injury when the software utilized by the VAMC only permits publication of a resident's report after it has been signed by the verifying radiologist. For the reasons discussed below, the Court determines a resident radiologist does owe a duty of care to its patients, and there is a genuine dispute of material fact related to causation.

A. Duty

Defendant argues Plaintiffs have failed to establish Dr. Dickman, as a resident radiologist, owed a duty of care to Mr. Parraz for two reasons. First, Defendant contends there was no physician-patient relationship between Dr. Dickman and Mr. Parraz. (Doc. 115) at 14. Next, Defendant asserts Plaintiffs lack expert testimony establishing any specific duty of care applicable to Dr. Dickman. *Id.* at 15. The Court addresses each argument in turn.

As to Defendant's first argument, the Court is not persuaded and concludes Dr. Dickman had a physician-patient relationship with Mr. Parraz. The United States fails to cite any authority establishing a resident radiologist does not owe a duty of care to patients with whom he is conducting a scan. Although Defendant argues there was a "firewall" between the resident and patient, the Court determines that reviewing medical records, studying imaging, drafting reports, and signing one's name on the final report is sufficient to create a physician-patient relationship. *See Gallegos v. Wood*, 2016 WL 1426554, at *23–25 (D.N.M.) (discussing various ways a physician-patient relationship can be established in New Mexico).

Turning to Defendant's next argument, the Court disagrees and determines Plaintiffs' expert, Dr. Nisenbaum, articulated a standard of care, which was not disputed by any expert for the United States. Dr. Nisenbaum stated both a resident radiologist and the attending radiologist owe a duty of care to a patient, although the residents standard may be less than that of the attending radiologist.[1] (Doc. 123-4) at 7. The United States argues Dr. Nisenbaum's testimony

---

[1] Defendant fails to cite any caselaw to support its proposition that a specific duty must be provided by an expert. (Doc. 115) at 15–17. According to the New Mexico Supreme Court, "*the court* must first find an actionable duty of care and then define the nature and scope of that duty." *Provencio v. Wenrich*, 2011-NMSC-036, ¶ 16 (emphasis added). To the extent Defendant attempts to undermine Dr. Nisenbaum's testimony by relying on his failure to consider the software system used, the Court finds this argument unavailing as it cites no authority to support such conclusion. (Doc. 115) at 16.

6

regarding the difference between a resident and attending radiologist must mean a resident does not owe a duty or, in the alternative, that Dr. Nisenbaum did not meet Plaintiffs' burden. (Doc. 115) at 14–15. To the contrary, the Court finds without additional expert testimony or objections to Plaintiffs' expert, Plaintiffs have established Dr. Dickman owed a duty of care to Mr. Parraz. After all, Dr. Nisenbaum articulated it "is an unequivocal responsibility for a radiologist" "to look at everything on the images" regardless of the radiologist's residency status. (Doc. 123-4) at 7. Although the Court acknowledges the VAMC's educational learning environment for its residents, it cannot eliminate the duty owed by a doctor to his patients.

Based on Dr. Nisenbaum's testimony, report, and relevant caselaw, the Court determines the applicable standard of care is that of a reasonably prudent radiologist in his third year of residency. *See* Gallegos, 20162016 WL 1426554, at *23–25 (concluding less qualified physicians, specifically a fellow, can be sued for malpractice in New Mexico); *see also Sullins v. Univ. Hosps. of Cleveland*, 2003-Ohio-398, ¶ 30 ("For doctors in training (interns, residents or fellows), the standard of care is that of a doctor of ordinary skill, care and diligence at the same stage of his training, under like or similar circumstances."); *Centman v. Cobb*, 581 N.E.2d 1286, 1288 (Ind. Ct. App. 1991) ("[A]n intern is a practitioner of medicine required to exercise the same standard of skill as a physician with an unlimited license to practice medicine.").

B. Breach

To analyze breach, the factfinder must determine whether the doctor met the appropriate standard of care after hearing evidence from experts. *Torres*, 2014 WL 11514672, at *4. Defendant argues Plaintiffs offer no evidence that Dr. Dickman, as opposed to Dr. Pitt, missed the nodule. (Doc. 115) at 17. This argument is founded upon the premise that Dr. Dickman could not remember reviewing Mr. Parraz's scan. *Id.* Additionally, Defendant asserts Plaintiffs'

7

expert only made conclusory, unsupported assumptions regarding Dr. Dickman's alleged failures. *Id.* at 17–18. The Court finds both arguments unavailing.

First, the Court finds the United States' position that it could have been either Dr. Pitt or Dr. Dickman who missed the nodule conclusory and speculative. Viewing the facts in light of the nonmoving party, the Courts finds it more likely than not Dr. Dickman first missed the nodule then Dr. Pitt. Not to mention this argument undermines the principles of the VAMC[2], as any negligent doctor would be immune from liability since the software cannot track changes.

Second, both Dr. Nisenbaum and Dr. Dickman testified Dr. Dickman breached his duty of care. After agreeing Dr. Dickman breached the standard of care for a radiologist, Dr. Nisenbaum unequivocally stated, "the resident reviewed the images with the intent to find new pulmonary nodules and failed to do so." (Doc. 123-4) at 60:18–61:5, 135:20–137:1. Although Dr. Nisenbaum agreed Dr. Dickman breached the standard of care for a radiologist (as opposed to resident radiologist), he also stated it "is an unequivocal responsibility for a radiologist" "to look at everything on the images," and "the one thing you don't want to miss is the nodule you've been requested to find." (Doc. 123-4) at 7. Finally, Dr. Nisenbaum opined that considering the volume of Mr. Parraz's chest and the size of the nodule, "99 plus percent of all radiologists need to see that…a competent and reasonable radiologist should not be missing that." (Doc. 123-4) at 3. In addition, Dr. Dickman, in his deposition, stated, "[i]f there was a suspicious pulmonary nodule, like you said, between 5 and 7 millimeters and it wasn't reported, then yes, that would be under the standard of care." (Doc. 123-3) at 7. Notably, Mr. Parraz's nodule was 9 millimeters long. (Doc. 123-4) at 2, 42:25.

---

[2] Dr. Jason Funderburk, the Chief of Imagining at the VA, agreed that "every physician shares in the responsibility and accountability for their efforts in provision of care." *See* (Doc. 115-6) at 5, Deposition of Jason Funderburk.

After considering all facts in light most favorable to Plaintiffs', the Court concludes there remains a genuine dispute of material fact because Dr. Dickman may have breached his duty owed to Mr. Parraz.

C. Causation

Under New Mexico law, an act or omission is a "cause" of a plaintiff's harm if it contributes to bringing about the harm and the harm would not have occurred without it. *See* U.J.I. § 13-305. "It need not be the only explanation for the injury." *Id.* Here, Defendant argues Dr. Pitt's decision to verify, sign, and release the June 2020 report to Mr. Parraz's treating physician broke the chain of causation. Without such verification, Defendant argues no injury would have occurred. (Doc. 115) at 19. The Court disagrees and concludes a genuine dispute of material fact remains.

Plaintiffs' expert, Dr. Han, opined that had the nodule been reported after the June 2020 scan, Mr. Parraz could have taken additional steps to prolong his life. *See* (Doc. 123-8) at 9. However, the question remains whether Dr. Pitt relied on Dr. Dickman's failure when he finalized the report. Additionally, the question remains whether the PowerScribe software, which prohibits residents from verifying reports, essentially cut off liability from Dr. Dickman.[3] Both parties agree summary judgment is proper on the element of causation where reasonable minds can draw only one conclusion. (Doc. 115) at 18. Here, the Court is unable to conclude that reasonable minds could determine only that Dr. Pitt's signature on the report cut off Dr. Dickman's liability for the original failure. Thus, Plaintiffs raise a genuine dispute of material

---

[3] The Court cautions Defendant on proceeding with an intervening cause theory as it is to be used when there is an unforeseeable force, not in operation at the time the defendant acted, that is not a concurrent cause of the plaintiff's injury. *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001-NMCA-045, ¶¶ 18, 23.

9

fact as to whether Dr. Pitt relied on Dr. Dickman's failure when he certified the report which caused Mr. Parraz's wrongful death by missing the nodule.

*IV.*     *Conclusion*

For the reasons stated above, the Court denies Defendant's Motion for Summary Judgment, (Doc. 115). Based on the outcome of this Order, the Court denies Defendant's request to dismiss Plaintiff Sylvia Parraz's loss of consortium claim.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE