IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NOAH PARRAZ, as Personal Representative
of the Wrongful Death Estate of GILBERT PARRAZ,
and SYLVIA PARRAZ, individually,

    Plaintiffs,

v.                                                  Case No. 1:22-cv-472 KG-JMR

THE BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, as trustees
of the University of New Mexico Hospital, and
THE UNITED STATES OF AMERICA, DANIEL
J. DICKMAN, M.D., and RONALD A. PITT, M.D.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before Court on Plaintiffs' Motion for Partial Summary Judgment, (Doc. 101), filed on December 4, 2023. Defendant filed their Response, (Doc. 116), on January 8, 2024, and Plaintiffs filed their Reply, (Doc. 124), on January 29, 2024. Having considered the briefing and applicable caselaw, the Court denies Plaintiffs' Motion.

*I.*    *Background*

On June 27, 2022, Plaintiffs filed this action against the Board of Regents of the University of New Mexico, the United States of America, Daniel J. Dickman, M.D., and Ronald A. Pitt, M.D. for medical negligence, wrongful death, and loss of consortium following Gilbert Parraz's death. (Doc. 16). As of the date of this Order, the United States is the only remaining defendant.

The facts in this section are either undisputed or stated in light most favorable to the nonmovant, Defendant. To the extent facts have been omitted, the Court deems them immaterial to the Motion. Both parties agree that Dr. Dickman was an employee of the Veterans

Administration (VA), and Dr. Pitt was an employee of the University of New Mexico hospital. (Doc. 14), *see* (Doc. 110).

At all material times, Gilbert Parraz was a Navy veteran and patient at the Raymond G. Murphy VA Hospital (VAMC). (Doc. 115) at 3, (Doc. 123) at 3, Undisputed Material Fact ("UMF") 1. Mr. Parraz had a history of smoking and was enrolled in a lung-cancer screening program. (Docs. 115, 123) at 3, UMF 2. At the VAMC, Mr. Parraz's primary care provider, Dr. William Anderson, referred Mr. Parraz to have an annual chest CT screening. (Doc. 115-1) at 3–5, UMF 3. Mr. Parraz underwent a lung screening test on June 5, 2020, at the VAMC. (Doc. 115) at 4, (Doc. 123) at 4, UMF 4. During this screening, Dr. Dickman, a third-year senior resident radiologist, utilized a software called PowerScribe to create a draft report of the scan. (Doc. 115) at 5, (Doc. 123) at 5, UMF 5. Once the draft report was complete in PowerScribe, it was sent to Dr. Ronald Pitt to review, verify, and finalize. (Doc. 115) at 6–7, (Doc. 123) at 6, UMF 6. After Dr. Pitt finalized the report, it became available for Dr. Anderson to review. (Doc. 115) at 7, (Doc. 123) at 5, UMF 7.

The final radiology report from Mr. Parraz's June 5, 2020, scan "did not include information about a nodule in the left lobe," despite the exam showing there was a nodule present. (Doc. 115) at 9, (Doc. 123) at 7, UMF 8. The report had two signatures, one from Dr. Pitt as the verifier radiologist and the other from Dr. Dickman, as the resident radiologist. (Doc. 16) at 7, (Doc. 21) at 3, UMF 9. On April 1, 2021, the hospital informed Mr. Parraz and his family that there was, in fact, a nodule present on the June 5, 2020, scan. Disclosure of Adverse Event (Doc. 123-7), UMF 10. On April 26, 2021, just over three weeks later, Mr. Parraz died without obtaining a cancer diagnosis. (Doc. 115) at 10, (Doc. 123) at 8, (Doc. 16) at 9, (Doc. 21) at 4, UMF 11.

Plaintiffs provided two experts, Dr. Josef Nisenbaum and Dr. Stephanie Han. *See e.g.* (Doc. 115) at 10–12, (Doc. 123) at 10–11. Dr. Nisenbaum established a standard of care, and subsequent breach, while Dr. Han established causation. *Id.* The parties interpret the experts' testimony differently. *See e.g.* (Doc. 115) at 10–12, (Doc. 123) at 10–11. Notably, the United States did not proffer any expert testimony to conflict with Plaintiffs' expert testimony.

Because much of Defendant's arguments rely on the VAMC's PowerScribe software, the Court finds it important to explain how it was utilized in this case. In PowerScribe, Dr. Dickman drafted a report of the scan as the primary interpreting radiologist. (Doc. 115-2) at 28:7–29:3. Once the draft was complete and ready for verification, Dr. Dickman selected "Approve" and PowerScribe alerted Dr. Pitt, the verifier, that Dr. Dickman's report was ready for review. (Doc. 123-3) at 71:20–23. At that point, Dr. Pitt reviewed the report and signed it to be released to Dr. Anderson. (Doc. 115-2) at 28:7–29:3. According to Defendant, PowerScribe was used as a "firewall" between residents and patients to ensure good care. (Doc. 116) at 10. This "firewall" was necessary to establish the VA's educational mission to create safe learning environments as it ensured residents work would be reviewed by an attending radiologist. *Id.* at 9.

II.   *Legal Standard*

Summary judgment should be granted if the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id.*

3

The parties must support factual allegations with evidence and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant still bears the burden to produce real evidence. The nonmoving party cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

III. *Analysis*

> Under the FTCA, the United States can be held liable for "personal injury or death caused by the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

4

*Bethel v. United States*, 456 Fed. Appx. 771, 777 (10th Cir. 2012) (citing 28 U.S.C. § 1346(b)(1)) (internal emphasis omitted). "This unequivocal waiver of immunity must be construed narrowly and the limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Id.* (internal quotations and citations omitted).

To prove a medical negligence claim under New Mexico law, a plaintiff needs to prove, through expert testimony: (1) the defendant owed the plaintiff a standard of care recognized by law and the medical community; (2) the defendant breached the standard of medical care; and (3) the defendant's acts or omissions caused the plaintiffs injuries. *Torres v. United States*, 2014WL 11514672, *9 (D.N.M.) (citing *Blauwkamp v. Univ. of New Mexico Hosp.*, 1992-NMCA-048); *Payne v. United States*, 2021 WL 6062114, at *3 (D.N.M.) ("Expert testimony from a competent medical professional is almost always required."). "A defendant seeking summary judgment in a medical malpractice action must negate at least one of the elements of the plaintiff's claim." *Id.* In their Motion, Plaintiffs assert that because Defendant did not provide expert testimony to contradict Plaintiffs expert, Dr. Dickman's negligence is uncontroverted. (Doc. 101) at 12. In response, Defendant contends Plaintiffs fail to meet their burden. (Doc. 116) at 18.

In its most recent Memorandum Opinion and Order, (Doc. 136), the Court determined Dr. Dickman owed a duty to Mr. Parraz to act as a reasonably prudent radiologist in his third year of residency. *See* (Doc. 136) at 6–7. Because of this previous determination, the Court will not again analyze duty here. The parties briefing is substantially the same as their previous briefing for *Defendant's Motion for Summary Judgment*, (Doc. 115). *See* (Docs. 115, 123). This time, however, the Court analyzes the parties' arguments in light most favorable to the defendant.

5

A. Breach

To analyze breach, the factfinder must determine whether the doctor met the appropriate standard of care after hearing evidence from experts. *Torres*, 2014 WL 11514672, at *4. In their Motion, Plaintiffs assert "there are no genuine issues of material fact as to…breach" because Defendant did not offer expert testimony to the contrary. (Doc. 101) at 12. In Response, Defendant argues Plaintiffs offer no evidence that Dr. Dickman, as opposed to Dr. Pitt, missed the nodule. *See* (Doc. 116) at 19, (Doc. 115) at 17. This argument is founded upon the premise that Dr. Dickman could not remember reviewing Mr. Parraz's scan. *Id.* Additionally, Defendant asserts Plaintiffs' expert only made conclusory, unsupported assumptions regarding Dr. Dickman's alleged failures. *Id.* at 17–18. In reply, Plaintiffs assert Dr. Nisenbaum and Dr. Dickman's testimony establishes breach. (Doc. 123) at 15.

At this time, the Court concludes there is a genuine dispute of material fact despite Defendant's lack of expert testimony. Plaintiffs offer caselaw to support that "where evidence is undisputed and reasonable minds cannot differ, the question is one of law." (Doc. 101) at 12 (citing *New Mexico State Hwy. Dep't v. Van Dyke*, 1977-NMSC-027). The *Van Dyke* case, however, does not go so far as to establish lack of expert testimony leads to no genuine dispute of material fact. Additionally, reasonable minds could differ as to whether Dr. Dickman breached his standard of care.

Addressing Defendant's first argument, the Court is not convinced that it could have been either Dr. Pitt or Dr. Dickman who missed the nodule. However, viewing the facts in light most favorable to Defendant and considering the VA's educational goals, the Court cannot definitively say reasonable minds could not differ on whether Dr. Dickman breached his duty.

As to Defendant's second argument, both Dr. Nisenbaum and Dr. Dickman testified Dr. Dickman breached the standard of care. After agreeing Dr. Dickman breached the standard of care for a radiologist, Dr. Nisenbaum unequivocally stated, "the resident reviewed the images with the intent to find new pulmonary nodules and failed to do so." (Doc. 123-4) at 60:18–61:5, 135:20–137:1. Although Dr. Nisenbaum agreed Dr. Dickman breached the standard of care for a radiologist, he did not specifically articulate whether Dr. Dickman breached the standard of care for a resident radiologist. Yet, Dr. Nisenaum stated it "is an unequivocal responsibility for a radiologist" "to look at everything on the images," and "the one thing you don't want to miss is the nodule you've been requested to find." (Doc. 123-4) at 7. Finally, Dr. Nisenbaum opined that considering the volume of Mr. Parraz's chest and the size of the nodule, "99 plus percent of all radiologists need to see that…a competent and reasonable radiologist should not be missing that." (Doc. 123-4) at 3. In addition, Dr. Dickman, in his deposition, stated, "[i]f there was a suspicious pulmonary nodule, like you said, between 5 and 7 millimeters and it wasn't reported, then yes, that would be under the standard of care." (Doc. 123-3) at 7. Notably, Mr. Parraz's nodule was 9 millimeters long. (Doc. 123-4) at 2, 42:25.

After considering all facts in light most favorable to Defendant, the Court concludes there remains a genuine dispute of material fact as to whether Dr. Dickman breached his duty owed to Mr. Parraz.

B. Causation

Under New Mexico law, an act or omission is a "cause" of a plaintiff's harm if it contributes to bringing about the harm and the harm would not have occurred without it. *See* U.J.I. § 13-305. "It need not be the only explanation for the injury." *Id.* Here, Plaintiffs argue that Dr. Pitt relied on Dr. Dickman's erroneous report which ultimately led to Mr. Parraz's early

death. (Doc. 101) at 13. In Response, Defendant argues Dr. Pitt's decision to verify, sign, and release the June 2020 report to Mr. Parraz's treating physician broke the chain of causation and served as an independent intervening cause. (Doc. 116) at 19. Without such verification, Defendant argues no injury would have occurred. *See* (Doc. 16) at 20–21, (Doc. 115) at 19. In reply, Plaintiffs argue Defendant's independent intervening cause theory is inapplicable. (Doc. 123) at 17.

The Court agrees with Plaintiffs and finds Defendant's independent intervening cause theory inapplicable. An intervening cause theory is to be used when there is an unforeseeable force, in operation at the time the defendant acted, that is not a concurrent cause of the plaintiff's injury. *Chamberland v. Roswell Osteopathic Clinic, Inc.*, 2001-NMCA-045, ¶¶ 18, 23. In this case, Dr. Pitt's review and verification was not an unforeseeable force because his verification is required every time he reviews a report. In other words, Dr. Pitt's signature was a step in the process to publish the 2020 scan report, not an unforeseeable event.

Although the Court has determined the theory of intervening causes inapplicable, there remains the issue of causation. As explained in its previous Order, two questions remain: (1) whether Dr. Pitt relied on Dr. Dickman's failure when he finalized the report; and (2) whether the PowerScribe software, which prohibits residents from verifying reports, essentially cut off liability from Dr. Dickman. (Doc. 136) at 9. Both parties agree summary judgment is proper on the element of causation where reasonable minds can draw only one conclusion. (Doc. 115) at 18. Here, the Court cannot conclude that reasonable minds would agree that Dr. Dickman's erroneous report caused Mr. Parraz's early death. Thus, there remains a genuine dispute of material fact as to causation.

For the reasons stated above, the Court denies Plaintiffs' Partial Motion for Summary Judgment. (Doc. 101).

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE